FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 29, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JODY R.,[1]

                    Plaintiff,

          v.

MICHELLE KING, Commissioner of
Social Security,[2]

                    Defendant.

No.    1:24-cv-03139-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

Due to generalized anxiety disorder, major depressive disorder, panic

disorder, and bipolar disorder, Plaintiff Jody R. claims that she is unable to work

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

"Plaintiff." *See* LCivR 5.2(c).

[2] Michelle King became the Acting Commissioner of Social Security on January 21,

2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section

205(g) of the Social Security Act, 42 U.S.C. § 405(g), she is hereby substituted as

the defendant.

fulltime and applied for disability insurance benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) and argues that the ALJ erred at step three by failing to develop the record, erred in rejecting Plaintiff's subjective claims, erred in evaluating the medical opinion evidence, and erred in evaluating the non-medical witness statements.  As is  explained below, the ALJ erred by failing to develop the record. This matter is remanded for further proceedings.

## I.    Background

In September 2021, Plaintiff filed an application for benefits under Title 2, claiming disability beginning March 6, 2020, based on the mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4] After the agency denied Plaintiff benefits, ALJ Elizabeth Mariano-Jackson held a telephone hearing in December 2022, at which Plaintiff appeared with her representative.[5] Plaintiff and a vocational expert testified.[6]

Plaintiff testified that her highest level of education was a bachelor's degree.[7] She said that in 2006 she worked at Kadlec Regional Medical Center as a

---

[3] AR 277, 277.

[4] AR 146, 152.

[5] AR 81-108.

[6] *Id*.

[7] AR 87.

nurse technician.[8] She said that in 2007 she worked at Tri Cities Community Health as a registered nurse. She said she was also a registered nurse at Yakima Valley Memorial Hospital but that her last job was in 2021 working for American Greeting.[9] She said that she left her job because it was too stressful and that she last worked as a registered nurse in 2018.[10] She said that she would have panic attacks and would get nauseous and had to call out of work.[11]

Plaintiff said that she had been on many medications and was currently taking the following: Gabapentin, Venlafaxine, Propranolol, Latuda, Lamotrigine, Buspirone, and Lorazepam.[12] She said that she had been on that combination of medication for several months to a year, but that she had been on some of them for several years, such as Venlafaxine and Lamotrigine, with Latuda and Buspirone more recently added.[13] She said that she takes the Lorazepam as needed and that the most significant side effect she could think of was the inability to concentrate, and said that when she takes Lorazepam it makes her sleepy but she does not take

---

[8] AR 89.

[9] *Id.*

[10] AR 90.

[11] *Id.*

[12] AR 90-91.

[13] AR 91.

DISPOSITIVE ORDER - 3

it every day but does take it most days.[14] She said that the memory and concentration issues affected her ability to function and complete simple things and that she forgets conversations and has to set reminders for appointments.[15]

Plaintiff said her daily activities were to get her kids up and to school, but that the rest of her day is different depending on whether it is a day where she is depressed and has no energy or motivation.[16] She said that on good days she will clean, get groceries, and run errands but that "outside of being a mom" she does not do much.[17] She said her children are ages 7, 9, and 12, and that they do not have after school sports but they will visit family members and play with their cousins, play soccer or football with her husband, and sometimes go camping or fishing.[18] She last went camping in August and over the summer she had gone on two camping trips where they stayed overnight about an hour away from home.[19] She said that she had gone fishing three or four times in the past summer.[20]

---

[14] AR 91-92.

[15] AR 92.

[16] AR 92-93.

[17] AR 93.

[18] AR 93.

[19] AR 93-94.

[20] AR 94.

Plaintiff said she had no psychiatric admissions but then it August 2021 she went to the emergency room because she thought she had heart issues but it turned out that it was a panic attack.[21] Plaintiff testified that as a child she had severe social anxiety and that while she was in nursing school she had several panic attacks with difficulty breathing.[22] Plaintiff said that in 2018 she found out that a relative had sexually abused her children and her anxiety became worse.[23] She said that since that year her anxiety got worse and worse over time.[24] She said that in 2019 she was low for weeks at a time with constant crying and feeling like she was worthless.[25] She said her week was half good days and half bad days.[26]

Plaintiff said that when she stopped working as a nurse she was working per diem because she had worked less and less as her anxiety worsened.[27] Plaintiff said that if she was planning to go fishing with her family and woke up having a bad day she would cancel the fishing outing and not go and that she has done that

---

[21] *Id.*

[22] AR 95.

[23] *Id.*

[24] AR 96.

[25] *Id.*

[26] *Id.*

[27] AR 97.

many times.[28] She said that when they camp she worries about animal attacks and other things and that she does not enjoy it.[29] She said that when she cannot function her husband helps her and that her father lives with them and also helps.[30]

Plaintiff testified that her condition had improved initially when new medications were added but over time got worse and that it was a cycle of medications being added again and again.[31] She said that it is awful to go without her medication.[32] Plaintiff said that the medications made her panic attacks less frequent but she still gets them once a week and they last 30 minutes to an hour with symptoms that range from not being able to calm down to having chest pain and shortness of breath.[33]

---

[28] AR 97-98.

[29] AR 98.

[30] AR 99.

[31] AR 100.

[32] *Id*.

[33] AR 101.

1   After the hearing, the ALJ issued a decision denying benefits.[34] The ALJ

2   found Plaintiff's alleged symptoms were not entirely consistent with the medical

3   evidence and the other evidence.[35] As to medical opinions, the ALJ found:

4   - The state agency evaluators' statements that there was insufficient

5       evidence to evaluate the claim was not a medical opinion and does not

6       require any evaluation as to persuasiveness.

7   - The opinion of treating source Mark Joy, MD, is not persuasive.

8   - The opinion of treating source J. Fordmeir, ARNP, is not persuasive.[36]

9   As to the sequential disability analysis, the ALJ found:

10  - Step one: Plaintiff last met the insured status requirements of the

11      Social Security Act on December 31, 2021.

12  - Also at step one: Plaintiff had not engaged in substantial gainful

13      activity between her alleged onset date of March 6, 2020, and her date

14      last insured of December 31, 2021.

15  - Step two: Plaintiff had the following medically determinable severe

16      impairments: generalized anxiety disorder, major depressive disorder,

17      panic disorder, and bipolar disorder.

18

19  _____

20  [34] AR 14-31.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation

21  determines whether a claimant is disabled.

22  [35] AR 23-24.

23  [36] AR 25.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, including specifically Listings 12.04 and 12.06.

- RFC:  Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

  [Plaintiff] can understand, remember and carry out simple, routine and repetitive tasks involving only simple work-related decisions and occasional decision making and changes in the work setting. She can tolerate occasional interaction with coworkers and the public.

- Step four: Plaintiff is unable to perform her past relevant work as a registered nurse and a nursing assistant.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a laundry worker (DOT 361.685-018), dietary aide (DOT 319.677-014), and office helper (DOT 239.567-010).[37]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and on July 15, 2024, the Appeals Council denied review.[38] On September 11, 2024, Plaintiff timely filed this action.[39]

---

[37] AR 19-27.

[38] AR 1-6, 233.

[39] ECF No. 1.

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[40] and such error impacted the nondisability determination.[41] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[42]

## III.     Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred at step three by failing to develop the medical record by

---

[40] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[41] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a), (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[42] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1  requesting the medical records of ARNP/Dr. Wendy Baker,[43] who treated Plaintiff

2  during the relevant period; erred in rejecting Plaintiff's subjective complaints;

3  erred in evaluating the medical opinions; and erred in evaluating the nonmedical

4  witness statements.[44]  The Commissioner counter-argues that the ALJ fully and

5  fairly developed the record and asserts that the duty to develop the record further

6  is triggered only when there is ambiguous evidence or the record is inadequate to

7  allow for proper evaluation.[45] The Commissioner also argues that the ALJ properly

8  considered that Plaintiff's subjective complaints were not supported by the record,

9  and that her evaluation of the medical opinions and third-party witness statements

10 was proper.  As is explained below, the Court concludes that the ALJ's error in

11 failing to develop the medical record was consequential.  The Court also concludes

12 that the record requires development.

13 **A.    Duty to Develop: Plaintiff establishes consequential error.**

14     Plaintiff argues that the ALJ failed to develop the medical record by not

15 attempting to obtain the medical records of ARNP/Dr. Baker, who treated Plaintiff

16 during the relevant period.  As noted above, the Commissioner argues that the ALJ

17 did not err in failing to develop the record because she only had to develop the

18

   _____

19

20 [43] Wendy Baker held both a license as an advanced registered nurse practitioner and
   a doctorate in nursing obtained in 2019.

21

22 [44] ECF No. 6.

23 [45] ECF No. 8.

record if it was insufficient and that it was not.  In her reply, Plaintiff counter-argues that the ALJ's failure to attempt to obtain Dr./ARNP Baker's records was consequential because those records are the only records documenting Plaintiff's treatment during the relevant time period and in her decision the ALJ rejected evidence in the form of treatment records from the later period.

### 1.    Standard

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[46] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[47]

### 2.    The ALJ's Findings

The ALJ seemingly glossed over the lack of treatment notes for the relevant period.  While she acknowledged that Plaintiff had received treatment during the relevant period, she did not directly address the lack of treatment notes in the record.

The ALJ articulated the following in her decision:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the longitudinal evidence. For example, she had alleged her first panic attack after her grandma passed away well before the alleged onset date in 2009 (B12F6). She has stated that panic attacks with difficulty breathing, rapid heart beat, and chest pain symptoms increased since

---

[46] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[47] *Id.* at 1184.

then. She associated her chest pain to anxiety and panic attacks symptoms (B8F15). In November 2019, she reported that panic attacks in the last month related to interaction between her stepdaughter and son, but that prior to that, medications worked well to control anxiety and depression, and she denied adverse effects (B5F1). She complained of left sided chest pain with shortness of breath but that only lasts for seconds in August 2021 (B6F1). When she alleged panic attacks in 2022, she stated they occurred when selling greeting cards in mid-2021 but reported they were usually in the evening (B12F10). In 2022, she stated that she had no recent panic attacks but high anxiety feelings with emotional overwhelm (B12F14). In fact, even with emergency room visits, panic attacks were not observed by treatment providers. On several occasions, she acknowledged that she did not feel the need to make medication adjustments (B13F14, 15). The claimant's statements suggest the intensity and persistence of her symptoms were less limiting than alleged.[48]

She then went on to state:

Furthermore, the claimant's improvement with medication is inconsistent with her allegations of disabling mental impairment. *During the relevant period, she was under the care of medication management.* In May 2019, her anxiety was noted to be improved with no panic attacks and manageable anxiety (B5F5). She wanted no medication changes and was not interested in psychotherapy (B5F5). Her EKG was nonischemic, troponin negative, blood work negative and not concerning for a cardiac event (B6F2, duplicated at B7F12). A June 2021 annual exam noted some cognitive skills for de-escalation (B7F6). She tolerated medications with improved symptoms (B10F16; B12F6). No side effects from medications were noted (B13F7). More recently, providers advised that she continue her current medication without dosage adjustment (B13F15). The claimant's improvement with medication suggests her symptoms are well-controlled when compliant with treatment.[49] (emphasis added)

---

[48] AR 24.

[49] *Id.*

3.    <u>Relevant Medical Records</u>

The record contains medical records of Plaintiff's treatment with ARNP/Dr. Wendy Baker from March 14, 2019, through November 26, 2019, three- and one-half months prior to the alleged date of onset.[50]  There are no medical records for the relevant time period, however, the last record of treatment prior to the relevant period provided by ARNP/Dr. Baker, which is contained in the record, is from November 25, 2019.[51]  ARNP/Dr. Baker noted that three weeks prior to the visit, Plaintiff had experienced the worst panic attack she had ever experienced in her life.[52] She noted that in the last 6 weeks Plaintiff's mood, anxiety, and depression were worse, she was irritable and she was experiencing palpitations and chest pains.[53] On examination, mood and affect were reserved, she reported struggles

---

[50] AR 381-393. ARNP/Dr. Wendy Baker held an advanced master's degree as an ARNP and also held a doctorate in nursing, entitling her to the title Dr. Baker. *See also Wendy Baker remembered for her caring work with students, helping shape YVC's nursing programs* | Local | yakimaherald.com

[51] AR 381.

[52] AR 383.

[53] Id.

with anxiety attacks and her insight and judgment was "fair."[54] Her dosage of venlafaxine was increased by 50%.[55]

On June 11, 2021, Plaintiff presented to Dr. Joy for follow-up.[56] Dr. Joy noted that Plaintiff was treated in the past with 10 Mg of Fluoxetine (Prozac) and 1 mg Lorazepam and was presently treating with ARNP/Dr. Baker and getting her meds of 150 mg Venlafaxine (Effexor) 150 mg and Abilify with occasional Lorazepam through ARNP/Dr. Baker.[57]

On August 19, 2021, Plaintiff presented to Jeffrey Papazian, MD, of the emergency department of Yakima Valley Memorial Hospital with chest pains and shortness of breath, complaining that the chest pains were like those that accompanied her panic attacks, and that they were not affected by exertion.[58] Plaintiff reported that she was taking Abilify and Effexor for anxiety.[59] After performing an EKG and blood tests, Dr. Papazian opined that the chest pains were not cardiac in nature.[60]

---

[54] Id.

[55] Id.

[56] AR 405.

[57] Id.

[58] AR 394.

[59] Id.

[60] AR 305.

On November 12, 2021, Plaintiff presented to Dr. Joy and was treated for fatigue and pain in her extremities.[61] Dr. Joy noted that Plaintiff was being treated for mental illness by ARNP/Dr. Baker and was currently taking Lorazepam, Venlafaxine, and Abilify, and that recently ARNP/Dr. Baker had attempted to switch Plaintiff's medication of Abilify to Lithium.[62]

In a summary of an office visit made to Mark Joy, MD, on December 1, 2021, approximately 30 days prior to Plaintiff's date last insured, it was noted by Dr. Joy that Plaintiff was actively seeing ARNP/Dr. Baker and was currently being prescribed 10 mg Fluoxetine (Prozac) and 1 mg Lorazepam.[63] She was diagnosed by Dr. Joy with lipoprotein metabolism disorders, generalized anxiety disorder, and decreased white blood count.[64]

4.    Analysis

Plaintiff's attorney made the ALJ aware of the fact that the records from ARNP/Dr. Baker were outstanding by submitting written notice on the day of the hearing, after the hearing had taken place.[65]  Plaintiff's attorney wrote the following:

---

[61] AR 412.

[62] AR 413.

[63] AR 400-401.

[64] AR 401.

[65] AR 345.

> A hearing was held on December 7 for our client Ms. Roll. We discussed our client's records for the year 2020. She informed us after the hearing that she did not go to Northwest Medicine during that year. She did, however go to Central WA Behavioral Health during the year 2020 and was treated by Wendy Baker ARNP. Central WA Behavioral Health informed us that Ms. Baker passed away and all her records are in some sort of storage that they do not have access to.
>
> Thankfully we do have evidence to fill in the time gap due to the treating provider passing away. At 9F/2 Dr. Joy opined that the opined limitations have existed since 3-6-2020. Thus, we move for a fully favorable decision.[66]

The letter makes clear that the attempts made to obtain the records, which are the only treatment records for mental health rendered during the relevant period aside from Plaintiff's ER visit for symptoms of a panic attack in August 2021 which she thought to be cardiac issues, were limited to the day of the hearing. The letter also makes clear that Plaintiff's attorney did not ask the ALJ to obtain the records.

Although Plaintiff's attorney did not ask the ALJ to obtain ARNP/Dr. Baker's records, the ALJ was under a duty to develop the record, even in an instance in which the claimant was represented. [67] The omission of the records in question is troubling because they are the only treatment records that relate specifically to Plaintiff's mental health care and medication management during the relevant time period.

---

[66] *Id.*

[67] *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

DISPOSITIVE ORDER - 16

1     In her articulation of her reasoning in finding Plaintiff's testimony regarding

2 the intensity of her symptoms not credible the ALJ specifically noted that Plaintiff

3 reported worsening of her symptoms in November 2019 and then had no evidence

4 of panic attacks or other symptoms until her August 2019 ER visit for panic

5 symptoms she mistook as cardiac in nature.[68] In doing so, the ALJ essentially

6 found Plaintiff not credible due to lack of supporting evidence during the relevant

7 period, although the records did exist and the ALJ acknowledged that Plaintiff was

8 in treatment.

9     Additionally, the ALJ's reasoning that Plaintiff's improvement with

10 medication during the relevant period is inconsistent with her testimony is

11 unsupported.  There is no objective evidence that Plaintiff's condition improved or

12 deteriorated in the relevant period with medication because the mental treatment

13 notes were not in the record.

14     There was very little effort on the part of the parties to obtain what were

15 crucial treatment records.  At a minimum, the parties might have requested the

16 records from Wendy Baker's husband, Neil Barg, MD, who is a physician and the

17 Yakima Health District's health officer, who would presumably be well-aware of

18 the importance of keeping medical records.

19     Overall, there was a lack of medical evidence in the files pertaining to the

20 relevant period.  It was the express opinion of multiple state agency consultants

21

22 ────────────────

[68] AR 24.

23

that the record was insufficient to evaluate Plaintiff's claim.[69] Here the ALJ was on notice that the record required development and was aware that there were treatment records outstanding that pertained to Plaintiff's mental health during the relevant period.  It was error not to attempt to obtain those records.

1.  Summary

 The Court concludes that the case should be remanded and the ALJ should be directed to develop the record as necessary and to make a proper determination.

**B.   Medical Opinions, Subjective Complaints, and Third-party Statements: These issues are moot.**

Plaintiff asserts that the ALJ erred in rejecting her subjective complaints, erred in evaluating the opinion evidence, and erred in discounting the third-party witness statements.  Because the Court has remanded the case for development of the medical record, the ALJ will be required to re-consider the medical opinions, witness statements, and the credibility of Plaintiff's subjective complaints.

**C.   Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[70] When the court reverses an ALJ's

---

[69] AR 127, 134.

[70] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

decision for error, the court "ordinarily must remand to the agency for further proceedings."[71]

The Court finds that further development is necessary for a proper disability determination. Here, there is a possibility that medical records exist which establish a clear picture of Plaintiff's functioning during the relevant period. Therefore, the ALJ should try to develop the record, and if necessary, call a medical expert to testify.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[71] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1    IT IS SO ORDERED. The Clerk's Office is directed to file this order and

2 provide copies to all counsel.

3    DATED this 29th day of January 2025.

4

5                    _____
                        EDWARD F. SHEA
                  Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23